UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BRIGHTERGY LOUISIANA, LLC | CIVIL ACTION |
| VERSUS | NO: 20-2018 |
| GALCAN ELECTRIC & GENERAL CONTRACTING, LLC | SECTION: "A" (2) |

## ORDER AND REASONS

The following motion is before the Court: **Motion for Partial Summary Judgment (Rec. Doc. 64)** filed by the Defendant, third-party plaintiff, and plaintiff in counter-claim, GalCan Electric & General Contracting, LLC ("GalCan"). The plaintiff, Brightergy Louisiana, LLC d/b/a Influent Energy ("Influent"), opposes the motion. The motion, submitted for consideration on March 3, 2021, is before the Court on the briefs without oral argument.

On October 2, 2017, Influent and Entergy New Orleans, Inc. ("Entergy") entered into a contract for Distributed Generation Program Engineering, Procurement, and Construction pertaining to the installation of solar panels at various sites. The Court will refer hereinafter to this contract as "the Master Agreement." (Rec. Doc. 50-4, Exhibit A).

To effectuate the project, Entergy leased the rooftop of buildings owned by the New Orleans Regional Transit Authority ("RTA") for the installation of solar panels.

Influent then entered into a Subcontract Agreement with GalCan (Rec. Doc. 50-4, Exhibit B) in order to satisfy its obligations under the Master Agreement. The Master Agreement is an exhibit to the Subcontract Agreement, and that latter document makes

1

clear that GalCan was bound by each and every covenant, obligation, and provision contained in the Master Agreement, to the same extent that Influent was bound. One of the Master Agreement's provisions was an obligation to ensure that no liens of any kind were created on the property at issue in the contract.

Influent ultimately became dissatisfied with GalCan's performance under the Subcontract Agreement and it terminated that contract on March 16, 2020. On June 18, 2020, GalCan filed a Labor and Material Lien and Statement of Claim (at times "the Lien") against property located at 8225 Willow Street in New Orleans stating that $347,499.09 is owed. The Willow Street property is owned by RTA.[1] Influent was required to file a release bond in the amount of $434,373.86 in order to secure release of GalCan's lien.[2]  (Rec. Doc. 50-6, Exhibit C).

Influent filed the main demand against GalCan to pursue damages for breach of contract and to challenge the lien that GalCan filed against RTA's property on Willow Street, which Influent contends was done in breach of the Subcontract Agreement. GalCan answered the complaint and it filed (in addition to a counterclaim against Influent) third-party demands against Entergy New Orleans, Inc. and RTA.

On January 25, 2021, the Court denied Influent's motion for summary judgment explaining why Influent could not obtain judgment as a matter of law on its breach of

---

[1] As the Court has noted in previous rulings, the complaint references property located at 8201 Willow Street in New Orleans; the same address is stated in the Subcontract Agreement. The Lien was filed against the property located at 8225 Willow Street in New Orleans. (Rec. Doc. 50-7 Exhibit D). The specific property address is not material to any issue currently before the Court.

[2] Influent advises that it risked not being paid by Entergy as a result of GalCan's lien against RTA's property.

contract claim (the specific breach being Galcan's filing of the Lien) at that time. (Rec. Doc. 60, Order and Reasons).

GalCan now moves for partial summary judgment on the issue of whether it owes Influent indemnity under either Section 10 or Section 11 of the Subcontract Agreement. The crux of GalCan's argument is that it cannot owe indemnity to Influent under either section because those sections do not pertain to claims brought by GalCan itself. According to GalCan, since GalCan filed the Lien, as opposed to one of its agents, suppliers, or subcontractors having done it, neither Section 10 nor Section 11 can apply in this case. GalCan therefore moves for judgment as a matter of law on Influent's claim for indemnity under Sections 10 and 11 of the Subcontract Agreement.[3] (Rec. Doc. 1, Complaint ¶¶ 9, 10 & 15(e), (f)).

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).

The parties are in agreement that GalCan's motion for partial summary judgment presents a legal issue of contractual interpretation, and that no facts material to the

---

[3] Influent did not address Section 10 of the Subcontract Agreement in its opposition so GalCan posits that Influent has abandoned its claim for indemnity under this section. (Rec. Doc. 76, Reply at 1 n.2). As to Section 10 of the Subcontract Agreement, the Court agrees with GalCan in that this section does not support a claim for indemnity in conjunction with the Lien, which GalCan filed itself as opposed to having been filed by one of its agents, suppliers, or subcontractors. Therefore, GalCan is entitled to judgment as a matter of law on Influent's claim for indemnity under Section 10.

contractual analysis are in dispute. Neither party contends that Section 11 of the Subcontract Agreement is ambiguous.

Section 11 of the Subcontract Agreement reads in relevant part:

**Indemnification:** Subcontractor shall defend, indemnify and hold harmless . . . the "Influent Energy Group" . . . from and against all . . . losses, costs, charges, damages and expenses incurred . . . ***arising directly from Subcontractor's actions out of the Services under this Agreement*** . . . ***and Subcontractor shall have control of any defense or settlement.***

(Rec. Doc. 64-2 at 7) (emphasis added).

According to GalCan, the emphasized language in the quoted passage clearly and unambiguously means that indemnification is not available to Influent because 1) the fact that GalCan has control of any defense or settlement only makes sense with reference to a lien filed by someone other than GalCan itself; and 2) the Lien arose not out of GalCan's "actions out of the Services under" the Subcontract Agreement but rather because of Influent's actions of non-payment. GalCan contends that interpreting Section 11 to allow indemnity in this case would lead to "absurd consequences" because Influent could never be liable for breaching the contract by refusing to pay for services rendered. According to GalCan the absurd consequence would be that if Influent did breach the contract by refusing to pay, under Influent's interpretation of Section 11 GalCan would have to indemnify Influent for its own breach meaning that GalCan could never get paid.[4]

GalCan did not waive its right to be paid for the work that it performed. Therefore,

---

[4] Louisiana Civil Code article 2046, entitled No Further Interpretation When Intent Is Clear, states: "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."

it had every right to file a lawsuit (or counterclaim) for the money it claims to be owed, and if GalCan prevails, the Court agrees that enforcing Section 11's indemnity provision—in other words, making GalCan pay Influent for the money that Influent owes GalCan (as well as the expenses and legal fees associated with having to defend the claim)—would be an absurd consequence of enforcing Section 11. Of course, if it turns out that GalCan's counterclaim for money that it claims to be owed lacks merit, enforcing the indemnity provision so as to require GalCan to indemnify Influent for its expenses and legal fees in having to defend a meritless claim no longer seems quite as absurd a proposition. In other words, the Court is persuaded that the enforceability of Section 11 does perhaps turn on a disputed issue of fact, *i.e.*, whether Influent does in fact owe GalCan additional payments for services rendered—the payment of which GalCan could only hope to obtain by filing its claim. And the Court is not persuaded that the language giving GalCan the right to control any defense or settlement means that Section 11 cannot apply to a lien filed by GalCan.

But that aside, although GalCan did not waive its right to be paid for the work that it performed, it did contractually waive the right to file a lien, which was not a necessary part of pursuing Influent for the money owed. The Lien was filed against the property of a third-party—not property owned by Influent—and the cost to Influent to remove the Lien in accordance with its own contractual obligations to other parties was significant. At this time, the Subcontract Agreement has not been dissolved, which if granted would not only absolve GalCan of the contractual lien waiver but presumably also of Section 11's indemnification provision. If dissolution is not available, which means that filing the Lien will be considered a breach of the contract, then GalCan will have to indemnify

Influent for the costs, charges, etc. associated with the actions that Influent had to take as a result of the Lien.

In sum, the motion for partial summary judgment must be denied as to Influent's claim for indemnification under Section 11 of the Subcontract Agreement. As noted in note 3 above, the motion is granted as to Influent's claim for indemnification under Section 10 of the Subcontract Agreement.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Partial Summary Judgment (Rec. Doc. 64)** filed by the Defendant, third-party plaintiff, and plaintiff in counter-claim, GalCan Electric & General Contracting, LLC, is **GRANTED IN PART AND DENIED IN PART** as explained above.

March 11, 2021

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE